**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE:** | **CASE NO.:    25-41500 (TNAP)** |
| | **(Jointly administered)** |
| **MAXILL, INC.,** *et al.* | |
| | **CHAPTER 11** |
| | **JUDGE TIIARA N.A. PATTON** |

**MOTION OF CREDITOR DANA ROBIE FOR ENTRY OF AN ORDER DISMISSING CASE PURSUANT TO 11 U.S.C. § 1112(b)**

Creditor Dana Robie, by and through her undersigned counsel, files this motion to dismiss the chapter 11 cases of debtors Maxill, Inc. ("Maxill Ohio"), Maxill Realty, Inc. ("Maxill Realty"), and Maxill Dental, Inc. ("Maxill Dental") (collectively, the "Debtors") pursuant to 11 U.S.C. § 1112(b) (the "Motion"). In support of this Motion, Ms. Robie states as follows:

**JURISDICTION**

1.      This Court has jurisdiction to hear and determine this motion under (i) 28 U.S.C. § 1334, (ii) applicable orders of the United States District Court for the Northern District of Ohio issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2).

2.      Creditor Dana Robie ("Ms. Robie") is a party in interest as she is a judgment creditor of the Debtors and thus has standing pursuant to 11 U.S.C. § 1112(b) to bring this motion to dismiss.

## FACTUAL BACKGROUND

3. Creditor Dana Robie ("Ms. Robie") is a former employee of maxill Ohio. In the summer of 2020, maxill Ohio denied Ms. Robie the payment of earned commissions and wrongfully terminated her employment in violation of Ohio law.

4. Because of a pre-employment agreement, Ms. Robie was forced to arbitrate her claims. In July 2023, the arbitrator issued a decision on liability finding that Ms. Robie was denied earned commissions and wrongfully terminated. On March 5, 2024, Ms. Robie obtained the final arbitration award against maxill Ohio in the amount of $308,661.98 plus interest at 8% per annuum from the date of the award.

5. In June 2024, Ms. Robie filed an Application to Confirm the Arbitration Award in the Trumbull County Court of Common Pleas ("Trumbull County"). Knowing that a judgment against the company was inevitable, in the six months before the Application to Confirm was filed, maxill Ohio drained its PNC bank account (a $200,000 average balance was reduced to $89 by the end of June 2024) and it did so by transferring money to other entities owned by maxill Ohio's owner, John Shaw ("Shaw").

6. On October 30, 2024, Trumbull County confirmed the Arbitration Award and entered judgment against maxill Ohio in the amount of $308,661.98 plus interest at 8% per annuum from the date of the arbitration award.

7. On November 8, 2024, Ms. Robie filed a Certificate of Judgment Lien in Trumbull County, which is the county in which Debtor maxill Realty's property is situated.

8. In December 2024 and January 2025, Ms. Robie filed bank garnishments, but as noted above, maxill Ohio had already transferred its cash assets to other entities owned by Shaw,

2

including his Canadian company of the same name. [1] Ms. Robie also attempted to garnish funds owed to maxill Ohio from its customers to no avail.

9. On January 30, 2025, Ms. Robie filed a Motion for Judgment Debtor Exam of maxill Ohio owner, John Shaw ("Shaw") in Trumbull County. The debtor exam was scheduled for March 26, 2025. Shaw did not appear.

10. On April 15, 2025, Ms. Robie filed a Motion for Order to Show Cause why maxill Ohio should not be held in contempt of court for failing to appear for the debtor exam. On the same date, maxill Ohio and BaderCap Pty. Ltd ("BaderCap") [2] entered into an Agreement Surrendering Collateral in Partial Satisfaction of Debt providing that maxill Ohio must make available to BaderCap or its designee "custody and possession of all Collateral."

11. Trumbull County set the Show Cause Hearing for May 28, 2025. Shaw again failed to appear. Trumbull County then issued an Order setting a second Show Cause Hearing for June 18, 2025, explicitly stating that a warrant would be issued for Shaw's arrest if he failed to appear.

12. On June 10, 2025, maxill Canada employee, Christine Thompson ("Thompson")[3], registered maxill Dental, Inc. ("maxill Dental")[4] as a for profit corporation in the state of Delaware.

---

[1] Shaw has a company named maxill, Inc. which is registered in Ohio and is the subject of this bankruptcy action and he also has a company named maxill, Inc. which is a Canadian business entity. To lessen confusion, the Ohio company is being referred to as "maxill Ohio" and the Canadian company will be referred to as "maxill Canada", although it is Ms. Robie's position that all of the maxill entities are one and the same.

[2] BaderCap is an alleged creditor of maxill Ohio but there is substantial evidence to prove BaderCap is a fictitious entity created by Shaw to defraud creditors. According to Shaw, BaderCap is an investment company in Taipei, Taiwan. However, an internet search did not produce any results for a company by the name of BaderCap located in Taiwan, the various addresses listed for BaderCap in Taiwan do not produce any result connected to BaderCap, the Canadian address listed on various documents is actually Shaw's residential address, and there is a LinkedIn profile for a "Brian DeYue" who is listed as a Strategic Financial Advisor for maxill, Inc. and a Private Equity Analyst for SMIC – BaderCap Investments, but the picture listed for Brian DeYue is actually a stock photo which can be found on iStock under the description, "Asian Businessman 2."

[3] Creditor Loops has alleged in a court proceeding in Canada that Shaw fraudulently transferred real property situated in Canada to Thompson in an effort to put it out of the reach of creditors.

[4] maxill Dental, Inc. is also a debtor in these jointly administered cases.

3

13.     On June 11, 2025, only a week before the scheduled debtor exam, a Bill of Sale and Assignment was entered into between maxill Ohio and maxill Dental in which maxill Ohio transferred literally all its assets, including maxill Realty (and maxill Realty's real property in Cortland, Ohio) which was owned by maxill Ohio, to maxill Dental.

14.     On June 13, 2025, Thompson registered maxill Dental in Ohio as a "Foreign For Profit Corporation."

15.     On June 18, 2025, Shaw appeared for the Show Cause Hearing, provided some of the requested documents, and submitted to a Debtor's Exam, but refused to answer questions about his personal finances, maxill Canada, or BaderCap, and pretended to know little about maxill Dental and maxill Realty.

16.     On July 21, 2025, Ms. Robie filed a Motion for Order for Supplemental Debtor's Exam in Trumbull County asking that the Court order Shaw to provide information and documents on his related business entities because Ms. Robie had evidence to show maxill Canada, maxill Dental, and maxill Realty are alter-egos of maxill Ohio and are also subject to collection in satisfaction of Ms. Robie's judgment.

17.     On August 4, 2025, Ms. Robie filed non-wage garnishments of PNC Bank, US Bank, and Benco Dental regarding any accounts in the name of maxill, Inc. and/or maxill Realty as alter-ego of maxill, Inc. and/or maxill Dental as alter-ego of maxill, Inc.

18.     On September 24, 2025, maxill Realty and maxill Dental filed a Motion to Intervene in Trumbull County and filed a Request for Hearing on the garnishments.

19.     On September 29, 2025, US Bank answered the garnishment and paid a total of $76,714.54 into Trumbull County from accounts of maxill Realty.

4

20.     A hearing on the garnishment was set for November 4, 2025. Rather than holding a formal hearing, Judge Ronald Rice met with counsel for Ms. Robie and counsel for maxill Realty and maxill Dental on November 4, 2025. Judge Rice reset the evidentiary hearing for December 10, 2025. He instructed counsel for maxill Realty and maxill Dental to submit corporate record books, financial statements, and tax returns (among other items) for each of the companies and to have the owners of all related entities (including BaderCap, which is supposedly located in Taiwan, and maxill Canada) present at the hearing. Judge Rice warned that the garnished funds would go to Ms. Robie unless the evidence at the hearing showed that maxill Realty and maxill Dental are entirely separate from maxill Ohio and its owner, John Shaw.

21.     In late November or early December 2025, Ms. Robie's counsel spoke with counsel for maxill Realty and maxill Dental to see if a resolution could be reached prior to the hearing. Ms. Robie's counsel voiced her intention to file a foreclosure action on the property owned by maxill Realty in Trumbull County following the all-but-certain finding of Trumbull County that maxill Realty and maxill Dental are alter-egos of maxill Ohio.

22.     On the afternoon of December 9, 2025, the day before the scheduled evidentiary hearing that would have resulted in (1) a finding that maxill Realty and maxill Dental are alter egos and/or disguised continuances of maxill Ohio, and (2) the release of the garnished funds to Ms. Robie, Ms. Robie was notified that maxill Ohio, maxill Realty, and maxill Dental had all filed voluntary petitions for relief under subchapter V, chapter 11 of title 11. As a result, the hearing in Trumbull County was stayed and Trumbull County has continued to hold the garnished funds. It must be noted that the Debtors did not file any of the required schedules or other documents with their Petitions.

23.     On January 23, 2026, the United States Trustee filed a motion to dismiss or convert the chapter 11 cases of the Debtors pursuant to 11 U.S.C. 1112(b) [DOC 56]. The motion sets forth the Debtors' failures to timely file their schedules, small business documents, monthly operating reports, and IDI documents, and their failure to provide proof of adequate insurance.

24.     On January 29, 2026, the 341 Hearing was commenced. Shaw appeared to answer questions on behalf of all three Debtors. Because the required documents had not been provided as set forth in the motion to dismiss, the hearing was limited to basic questions about each of the entities and was scheduled to resume on February 6, 2026. Despite Shaw's previous representations to Trumbull County that he had had no role in maxill Dental or maxill Realty, Shaw confessed that he had become President of both maxill Dental and maxill Realty on January 9, 2026 (after the schedules were filed listing Thompson as President), but that he had knowledge to testify regarding those companies for the entire time period subject to questioning.

25.     On February 2, 2026, Creditor Loops filed a Joinder of Creditor Loops to the Trustee's Motion to Dismiss, arguing that the Debtors had filed bankruptcy "to delay and hinder ongoing litigation with Loops and other creditors" and that the cases should be dismissed.

26.     On February 4, 2026, Ms. Robie filed a Joinder to the Trustee's Motion to Dismiss, arguing that dismissal of the cases is in the best interest of creditors.

27.     On February 6, 2026, the 341 Hearing resumed but was not completed because the Debtors still had not provided all required documents, revisions clearly needed to be made to the schedules that had been filed, and numerous additional documents were requested. During the hearing:

- Shaw could not explain various intercompany transactions;

- Shaw noted that BaderCap is now completely out of the picture (likely because his house of cards was falling as it is clear that the company was entirely made-up by Shaw

to hold a security interest in the assets of all of the maxill entities to keep them out of the reach of creditors);

- Shaw admitted that the $14 million BaderCap mortgage on the maxill Realty property was for "creditor proofing" and was not actually a mortgage requiring repayment;

- Shaw admitted that even though maxill Ohio had always had profitability issues, BaderCap did not ask for repayment until after Trumbull County threatened Shaw with contempt of court;

- Shaw stated that maxill Ohio sold its assets to maxill Dental but that there was not an actual a sale; rather, it was just a transfer of assets and maxill Ohio received no money from maxill Dental;

- Shaw admitted inaccuracies on the schedules that were filed (for example, maxill Ohio listed $2.2 million in gross revenue from 5/1/25 – 12/15/25, but Shaw said it was actually closer to $480,000);

- Shaw stated that maxill Canada was listed as a debtor of maxill Ohio in the amount of $1.5 million based on a promissory note and security agreement but admitted that maxill Ohio did not actually receive anything in exchange; rather, he said maxill Canada obtained the promissory note and security agreement to protect its financial interests;

- Shaw agreed maxill Realty is a debtor of maxill Ohio in the amount of $1.5 million as reflected on the schedules for accrued rent, but did not produce the lease agreement and could not say for what time period the $1.5 million applied;

- Shaw could not explain why $2 million had been transferred from maxill Ohio to maxill Canada from December 2024 through December 2025;

- Shaw admitted that no valuation had been conducted to determine the value of maxill Ohio's assets when BaderCap executed on its security interest or when the assets were transferred to maxill Dental;

- The schedules do not show any reduction in BaderCap's claims against maxill Ohio or maxill Realty even though BaderCap executed on its security interest in June 2025 and took all of maxill Ohio's assets;

- Shaw stated that maxill Dental paid the retainer for Attorney Steele for all three debtors;

- Shaw testified that during the pendency of the bankruptcy, BaderCap sold maxill Dental to maxill Canada, but he could not give any specifics about the sale besides saying there was a redemption of shares;

- Shaw testified that he owns maxill Canada, that maxill Canada owns maxill Dental, and that maxill Dental owns maxill Realty;

- Shaw stated that maxill Dental employees perform the day-to-day operations of maxill Realty but are paid by maxill Dental;

- Shaw testified that maxill Realty filed bankruptcy because of the alter-ego allegations of a Judge and that litigation caused the filing;

- Shaw stated that maxill Realty's real property was purchased with funds from maxill Canada and that the $14 million BaderCap mortgage was based on the $8 million promissory note for maxill Ohio but that maxill Realty was not also a party to the promissory note;

- Shaw could not provide any information on (1) a transfer of $200,000 from maxill Realty to maxill Canada within 90 days of the bankruptcy filing or (2) a transfer of $362,000 from maxill Realty to maxill Canada within a year of the bankruptcy filing;

- Shaw could not explain a $200,000 check from maxill Realty to maxill Canada on November 19, 2025;

- Shaw stated, when asked about his intention of reorganization for the companies, that his intention is unclear;

- Shaw stated that maxill Realty made health insurance payments for maxill Dental employees;

- Shaw admitted the same five employees that worked for maxill, Inc. now work for maxill Dental;

- Shaw stated that maxill Dental filed bankruptcy in response to "frivolous" litigation;

- Shaw said maxill Dental brings in $300,000 in monthly revenue and has inventory valued at approximately $700,000;

- Shaw could not explain why maxill Realty is listed as a debtor of maxill Dental in the amount of $200,000;

- Shaw could not explain why maxill Canada is listed as a debtor of maxill Dental in the amount of $247,000, which is the same amount listed on maxill Ohio's schedules as a debt owed from maxill Canada to maxill Ohio, but stated that it must be a mistype;

- Shaw could not explain the time period for which royalties are owed from maxill Dental to maxill Canada under a Royalty Agreement that had not been produced;

- Shaw stated that Schedule G needed to be amended for maxill Realty and maxill Ohio;

8

- Shaw could not explain the $656,000 listed as being paid from maxill Dental to maxill Canada within 90 days of the bankruptcy filing, and said it probably should have been split between maxill Ohio and maxill Dental, but maxill Ohio was supposedly not even operating in the 90 days prior to the bankruptcy filing;

- Shaw stated that the business of maxill Ohio and the business of maxill Dental "is essentially the same" and a data dump was accomplished in the summer of 2025;

28. The 304 Hearing was scheduled to be continued on March 5, 2026 and Debtors were asked to provide a number of additional documents and to file revised schedules to address the numerous "mistypes" in the schedules by February 20, 2026.

29. On February 6, 2026, the Debtors filed objections to the U.S. Trustee's Motion and claimed it was complying with the bankruptcy rules.

30. On March 3, 2026, the U.S. Trustee filed his Motion of the United States Trustee to Disqualify Debtors' Counsel Pursuant to 11 U.S.C. 327(a) and Federal Rule of Bankruptcy Procedure 2014, arguing "disqualification of counsel is warranted due to conflicts of interest of Counsel and the failure to disclose such conflicts as required." [DOC 93]. In this Motion, the U.S. Trustee noted the following pertinent facts and conclusions:

- The Retention applications did not disclose maxill Ohio or maxill Dental as creditors of Realty and did not disclose maxill Realty loaned maxill Dental $197,975.58 forty-nine days prior to the Petition Date.

- The assignment of assets from maxill Ohio to maxill Dental, who was owned by BaderCap at the time of the assignment, may have been a transfer to an insider.

- The assignment of assets, valued at more than $2.7 million from maxill Ohio to maxill Dental did not decrease BaderCap's security interest in maxill Ohio so the "transaction should be investigated to determine whether it was a fraudulent transfer."

- Maxill Realty disclosed BaderCap has a claim of $8.2 million that is identical to the claim of BaderCap against maxill Ohio but the documents securing BaderCap's claim in maxill Ohio do not create liability for maxill Realty. The open-ended mortgage between BaderCap and maxill Realty does not explain why any claim of BaderCAp pursuant to that mortgage would be identical to its claim against maxill Ohio.

9

- "Because of the potential fraudulent transfer and preference claims between maxill Ohio against maxill Dental in addition to the substantial claims asserted by maxill Realty, Counsel's representation of both Debtors represents a conflict of interest. Counsel's Retention Applications failed to disclose those conflicts of interests."

31. Also on March 3, 2026, maxill Realty filed is Motion to Release Certain Funds that are Assets of the Bankruptcy Estate Currently Being Held by the Trumbull County Clerk of Court. In essence, maxill Realty is asking that the Trumbull County Court of Common Pleas be ordered to release the $76,133.45 that was appropriately garnished from maxill Realty's bank account to the estate of maxill Realty.

32. On March 4, 2026, the day before the 341 Hearing was set to resume, Ms. Robie's counsel was notified that the United States Trustee and the Debtors had reached an agreement whereby the case of maxill Ohio would be converted to chapter 7 and the cases for maxill Realty and maxill Dental would be dismissed. As such, the 341 meetings would be adjourned and no questions would be asked of the Debtors.

33. On March 10, 2026, Ms. Robie learned via email that the United States Trustee had agreed that the proposed agreed order between the United States Trustee and the Debtors would not be submitted or entered until after Mr. Steele "obtains a ruling on his pending motion for turnover."

34. On March 12, 2026, the United States Trustee filed his motion to convert the evidentiary hearing currently scheduled for March 24, 2026 to a status conference on the Motion to of the United States Trustee for Entry of an Order Converting or Dismissing Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b) (the "Motion to Dismiss") on the basis that the United States Trustee and the Debtor have reached a proposed agreement that would provide for the conversion of the Maxill Inc. case to chapter 7 and the dismissal of the Maxill Realty and Maxill Dental cases in resolution of the Motion to Dismiss.

10

**BASIS FOR RELIEF**

35.    Section 1112(b)(1) of title 11 of the Bankruptcy Code allows for the dismissal or conversion of a chapter 11 case for "cause." The statutory language is mandatory—if cause is found, the Court must dismiss or convert unless unusual circumstances apply. *In re Westgate Properties, Ltd.*, 432 B.R. 720, 722 (Bankr. N.D. Ohio 2010).

36.    Section 1112(b)(4) of title 11 of the Bankruptcy Code provides a non-exhaustive list of examples of "cause" for dismissal of a Chapter 11 case.[5] In addition to the non-exhaustive list under § 1112(b)(4), the Sixth Circuit has "consistently held that a debtor's Chapter 11 petition may be dismissed if it was filed in bad faith." *In re BCC Sandusky Permanent LLC*, 2017 Bankr. LEXIS 1516, 2017 WL 2470864, at *7 (Bankr. N.D. Ohio June 7, 2017) (quoting *Trident Assocs. Ltd. P'ship v. Metropolitan Life Ins. Co.* (*In re Trident Assocs. Ltd. P'ship*), 52 F.3d 127, 130 (6th Cir. 1995)).

37.    A determination for cause must be made following "a case-specific factual inquiry which focuses on the circumstances of each debtor." *In re Creekside Senior Apartments., L.P.*, 489 B.R. 51, 60 (B.A.P. 6th Cir. 2013).

38.    "Good faith is an amorphous notion, largely defined by factual inquiry. While no single fact is dispositive, courts have found the following factors meaningful in evaluating an organizational debtor's good faith: (1) the debtor has one asset; (2) the pre-petition conduct of the debtor has been improper; (3) there are only a few unsecured creditors; (4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court; (5) the debtor and one creditor have proceeded to a standstill in state

---

[5] As was set forth in the United States Trustee's Motion to Dismiss and further supported by the Joinders filed by Creditor Loops and Creditor Robie, there is cause to dismiss under sections 1112(b)(4)(A), (C), (E), (F), and (H), in addition to on the basis of bad faith as supported by this Motion to Dismiss.

11

court litigation, and the debtor has lost or has been required to post a bond which it cannot afford; (6) the filing of the petition effectively allows the debtor to evade court orders; (7) the debtor has no ongoing business or employees; and (8) the lack of possibility of reorganization." *Trident Assocs. Ltd. P'ship v. Metro. Life Ins. Co.* (*In re Trident Assocs. Ltd. P'ship*, 52 F.3d 127 (6th Cir. 1995).

## A. The Debtor has one asset.

39.　maxill Ohio has only one asset – a PNC checking account consisting of $1,005.87.

40.　maxill Realty's primary asset is its warehouse in Cortland, Ohio. It also has $16,582.91 in cash and cash equivalents and $14,000 worth of tangible personal property.

41.　maxill Dental has more than one asset, but primarily has cash assets. It must be noted that the vast majority of its revenue since its inception has been paid to Shaw's Canadian company, maxill, Inc., which is not part of these bankruptcy proceedings.

## B. The pre-petition conduct of the debtor has been improper.

42.　First, it should be noted that the Debtors, who are all controlled by Shaw, are so intertwined that their improper conduct should be considered as a whole and not independent from one another.

43.　maxill Ohio's pre-petition conduct was undoubtedly improper. First, maxill Ohio drained its bank accounts by transferring nearly all its cash assets to maxill Canada in anticipation of and following Ms. Robie's judgment against maxill Ohio. Then, maxill Ohio fraudulently transferred all its assets to its disguised continuance maxill Dental, which was created for the sole purpose of defrauding Ms. Robie, only days before Shaw was ordered to appear in Trumbull County or risk a warrant for his arrest. The bankruptcy petition was filed the afternoon before an evidentiary hearing scheduled in Trumbull County to determine the alter-ego status of the maxill

12

entities and to determine whether $76,000 garnished from maxill Realty could be paid to Ms. Robie based on her judgment against maxill Ohio. Shaw admitted the bankruptcy petition was filed because of the alter-ego allegations of Judge Rice.

44. maxill Realty's pre-petition conduct was also improper. maxill Realty's real property is encumbered by a $14 million mortgage held by BaderCap (Shaw's fictitious entity), which Shaw admitted is not really a mortgage that has to be paid off but was for creditor proofing. maxill Realty's real property was purchased with funds from maxill Canada and the $14 million BaderCap mortgage was based on an $8 million promissory note with maxill Ohio. maxill Realty was not also a party to the promissory note. The mortgage was not reduced when BaderCap seized maxill Realty and its property. In addition, maxill Realty transferred $200,000 to maxill Canada within 90 days of the bankruptcy. maxill Realty transferred $362,000 to maxill Canada within a year of the bankruptcy filing. maxill Realty loaned maxill Dental $197,975.58 forty-nine days prior to the Petition Date. The bankruptcy petition was filed the afternoon before a hearing scheduled in Trumbull County to determine the alter-ego status of the maxill entities and to determine whether $76,000 garnished from maxill Realty could be paid to Ms. Robie based on her judgment against maxill Ohio. Shaw admitted the bankruptcy petition was filed because of the alter ego allegations of Judge Rice.

45. maxill Dental also engaged in improper pre-petition conduct. Shaw and Thompson created maxill Dental as the disguised continuance of maxill Ohio in order to shield maxill Ohio's assets from creditors. maxill Dental was party to the fraudulent transfer of all of maxill Ohio's assets to maxill Dental. maxill Dental transferred $656,520.71 to maxill Canada within 90 days of the bankruptcy filing and transferred a total of $1,136,187.84 to maxill Canada from the time of its inception in June 2025 to the filing of its petition. The bankruptcy petition was filed the

afternoon before an evidentiary hearing scheduled in Trumbull County to determine the alter-ego status of the maxill entities and to determine whether $76,000 garnished from maxill Realty could be paid to Ms. Robie based on her judgment against maxill Ohio. Shaw admitted the bankruptcy petition was filed because of "frivolous litigation."

**C.  There are only a few unsecured creditors.**

46.     According to its schedules, maxill Ohio has only three legitimate unsecured creditors: Ms. Robie, Loops (claim value is unknown, disputed, and contingent), and the Trumbull County Clerk of Court for $260.06.[6] The only other unsecured creditors listed on maxill Ohio's schedules are maxill Realty and maxill Canada.

47.     According to its schedules, maxill Realty has only three legitimate unsecured creditors: the Trumbull County Treasurer for accrued real estate taxes due February 2026 (has likely already been paid), Ms. Robie, and Loops (claim value is unknown, disputed, and contingent.[7] The only other unsecured creditor listed on maxill Realty's schedules is maxill Canada.

48.     maxill Dental has only five legitimate unsecured creditors: the Ohio Department of Taxation for $5,000 in estimated sales tax, the Trumbull County Treasurer for accrued real estate taxes due February 2026 (may have already been paid), FedEx for $5,000, UPS for $2,500, and Ms. Robie.[8] The only other unsecured creditors listed on maxill Dental's schedules are maxill Ohio and maxill Canada.

---

[6] The Trumbull County Clerk of Courts has not filed a proof of claim.

[7] The Trumbull County Treasurer has not filed a proof of claim. Robie is not listed on the schedules but filed a proof of claim on the basis that maxill Dental is an alter-ego of maxill Ohio.

[8] Neither FedEx, UPS, nor the Trumbull County Treasurer have filed proofs of claim though they are listed on maxill Dental's schedules. Robie is not listed on the schedules but filed a proof of claim on the basis that maxill Dental is an alter ego of maxill Ohio.

25-41500-tnap    Doc 106    FILED 03/16/26    ENTERED 03/16/26 10:54:43    Page 14 of 18

**D. The debtor's property is subject to foreclosure.**

49.     maxill Ohio does not have property subject to foreclosure because the real property out of which it operated was held by its alter-ego maxill Realty.

50.     At the time it filed its bankruptcy petition, maxill Realty was on notice that Ms. Robie intended to foreclose on maxill Realty's real property after obtaining an alter ego finding. maxill Realty also had reason to know it would be unsuccessful in defending against a foreclosure action in Trumbull County if and when Robie obtained an alter-ego determination. maxill Realty had reason to know that Trumbull County had seen through the sham that was BaderCap and that money obtained from the foreclosure would not go to Shaw through BaderCap but would go to Ms. Robie.[9]

51.     maxill Dental does not have property subject to foreclosure because the real property out of which it operates is owned by its subsidiary and alter-ego, maxill Realty.

**E. The debtor and Ms. Robie have proceeded to a standstill in state court litigation, and the debtor has lost.**

52.     Ms. Robie won her arbitration case against maxill Ohio. She then filed to enforce the award in Trumbull County and obtained a judgment against maxill Ohio in the amount of $308,661.98 plus interest at 8% per annuum from March 5, 2024.

53.     Ms. Robie successfully garnished a bank account of maxill Realty based on her judgment against maxill Ohio. Recognizing that a loss was inevitable at the hearing scheduled for December 10, 2025, maxill Realty filed its petition for chapter 11 bankruptcy.

54.     In post-judgment collection proceedings in Trumbull County, Ms. Robie presented ample evidence to show that maxill Dental is an alter-ego of maxill Ohio and that maxill Dental is

---

[9] A review of the Trumbull County Recorder's website lists the BaderCap mortgage as the only encumbrance on the property.

15

liable for Ms. Robie's judgment against maxill Ohio. Recognizing that an alter-ego finding and a finding of liability against maxill dental was inevitable at the hearing scheduled for December 10, 2025, maxill Dental filed its petition for chapter 11 bankruptcy.

**F. The filing of the petition effectively allows the debtor to evade court orders.**

55.     A hearing was scheduled for December 10, 2025 on the garnishments of maxill Realty and maxill Dental as alter-egos of maxill Ohio. At the meeting held on November 4, 2025, Judge Rice instructed counsel for maxill Realty and maxill Dental to submit corporate record books, financial statements, and tax returns (among other items) for each of the companies and to have the owners of all related entities (including BaderCap, which is supposedly located in Taiwan, and maxill Canada) present at the hearing. In filing their petitions, maxill Ohio, maxill Realty, and maxill Dental were able to avoid producing the requested documents and individuals and prevented the court from ordering the release of the garnished funds or making an alter-ego determination that would allow Robie to collect against maxill Realty and maxill Dental as well as maxill Ohio.

**G. There is no possibility of reorganization.**

56.     maxill Ohio is no longer in operation and has approximately $1,000 in assets. There is no possibility of reorganization.

57.     maxill Realty is a holding company of real property in Cortland, Ohio. It has no employees. There is no possibility of reorganization.

**DISCUSSION**

58.     The *Trident* factors all support dismissal of all three of the bankruptcy proceedings on the basis of bad faith. Based on the proposed agreement of the United States Trustee and the Debtors, it appears that they too believe dismissal of maxill Realty and maxill Dental are

16

appropriate. In the interest of justice and on the basis of bad faith, maxill Ohio must also be dismissed.

59.     The worst-case scenario for the creditors would be for only maxill Realty and maxill Dental to be dismissed while maxill Ohio is converted to chapter 7. These entities must be treated the same since they are one and the same.

60.     Because these cases were initiated and have been perpetuated in bad faith, they must be dismissed and the stay lifted so the creditors can continue their legitimate litigation and collection efforts against maxill Ohio, maxill Realty, and maxill Dental.

61.     Accordingly, there is cause for dismissal of all three cases under Section 1112(b)(1) of title 11 of the Bankruptcy Code for bad faith.

**WHEREFORE**, Ms Robie respectfully requests that the Court enter an order g or dismissing Debtors' cases for cause and granting any further relief as it deems just and proper.

Dated: March 16, 2026

Respectfully submitted,

*/s/ Diana Robinson*
Diana Robinson (0086642)
Paoff & Robinson, LLC
405 Madison Ave., Suite 1100
Toledo, Ohio 43604
Phone: (419) 243-9005
Fax: (419) 243-9404
E-mail: Diana@prwattorneys.com
Attorney for Creditor Dana Robie

17

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was electronically transmitted on this 16th day of March, 2026, to the following who are listed on the Court's Electronic Mail Notice List:

Lauren Schoenewald, Office of the US Trustee, lauren.schoenewald@usdoj.gov

Frederic P. Schwieg, Subchapter V Trustee fschwieg@schwieglaw.com

Scott N. Opincar, Counsel for Loops, L.L.C., sopincar@mcdonaldhopkins.com

Michael A. Steel, Counsel for Debtors, msteel@steelcolaw.com

_/s/ Diana Robinson_
Diana Robinson (0086642)

Counsel for the Creditor Dana Robie

18